Good morning. May it please the Court, Matthew Murray for Plaintiff Appellant Jose Navarro. In this toxic ground and air contamination case, the District Court made several errors. I'd like to focus on three. First, the Court granted judgment on the pleadings against Mr. Navarro's trespass claim on the ground that he only alleged intangible intrusions into his property when, in fact, the corrected Third Amendment complaint alleged the tangible intrusion of petroleum products in liquid and gaseous form through the land that he owned. Second, the Court entered summary judgment against Mr. Navarro's nuisance claim when there were material disputes of fact about whether the harm that Mr. Navarro suffered was substantial. And while the Court could reverse and remand on those two grounds, the District Court's errors on the merits also infected its decision denying Mr. Navarro's motion to substitute as class representative and decertifying the class, and so that order should be vacated as well. Let me start with trespass. There's no dispute here that the corrected Third Amendment complaint alleged a viable trespass claim under California law. The complaint alleged that the refinery caused the unauthorized entry of physical chemical pollutants into and through the land, into and through Mr. Navarro's land, both in liquid and gaseous form. There are many California cases recognizing that contamination from petroleum products like this stay at a valid trespass claim. The Starr case, Watson Land case. Those are liquid petroleum, right? And the theory here was vapor into the house? So the reason that the District Court granted judgment on the pollutants was to a conclusion that Mr. Navarro had abandoned the allegations about contamination of the soil and that the trespass claim was solely about vapor, soil vapor, entering the indoor air. And that was an error. The allegations in the complaint about trespass are about the unauthorized entry and invasion of his land with physical chemical pollutants. The harm caused by that trespass is the exposure of Mr. Navarro to soil vapors in his home that increased his risk of adverse health effects. But that's the harm that he sought a remedy to. The trespass was the invasion of his property. So that may be, but what I don't understand is how his brief didn't essentially double down on the mistake. So at ER 4392 to 96, there's this section of the reply brief from your client saying, when the other side was saying this is only about vapor and California law doesn't allow a trespass claim on vapor, the response was defendants are not entitled to judgment as a matter of law because the intrusion of hazardous vapors constitutes a trespass. And I just couldn't find anywhere in that brief that said, and anyway, we're not only alleging vapors. So I agree that the complaint itself, whether or not the complaint itself is what you say, I don't know how it wasn't abandoned in that reply brief. So the reply brief, the quote from the district court relied on says, the trespass claim asserted on behalf of the ground subclass remains unchanged. That was the trespass claim that had been in the case and that had been previously certified by the court. It's premised on evidence that subsurface contamination from the refinery poses a vapor intrusion risk into the structures. So it's the subsurface contamination that is the trespass and the harm that it causes is the vapor intrusion into the home that should be remedied. This is like the analogy I provide is the Miller case that we cited at 187 Cal Up 3rd, 1463, where the California court said that a homeowner could sue for emotional distress damages because the TV crew that came in with paramedics into their home, trespassed into their home, broadcast footage of her husband dying of a heart attack on the news. And the emotional distress was from the broadcast after the fact that was a result of the trespass. So the trespass again here is the invasion of the property with tangible physical substances. The harm is that makes sense. I just don't know. I mean, at some point, I think the court is allowed to rely on the party's construction of their claim. And when the other side is arguing very clearly, I think California law doesn't allow this intangible vapor theory. And instead of saying, well, that's not our theory. Our theory is the underground liquid. You come back and say, no, no, California law does. I just I'm not sure how you get around that. I would say, Your Honor, in the brief and in the hearing, counsel repeatedly said our our claim has not changed. So in response to the point of even if that claim had been abandoned and if we're just focusing on soil vapor, soil vapor intrusion through the land is a tangible intrusion through the land under under California law. The other side relies on Wilson, San Diego gas. These are cases involving intangible, nonphysical substances, noise, electromagnetic radiation, light. Soil vapor gas is made up of physical particles. It is material. It is matter. And the invasion of matter through the land and it's going through the land, Mr. Navarro's land, his property, that he has a right to exclusive possession to and to exclude entry of others into, is the the trespass. The Thrifty Tell case that we cite from California says that electric signals, electronic signals that are causing in computer hacking are sufficiently tangible to constitute trespass. The Elton case said it was a case that involved fire as trespass, but but cited approvingly the Martin case from Oregon where they said invisible fluoride particles are sufficiently tangible to consent to constitute trespass. The other side hasn't cited any cases that have held that physical matter, particulate matter, particles of matter, whether they're gas. Don't they have cases though talking about odor not being enough? And odor, I think, I mean this is so weird because I I agree that gas is particles, but California seems to not think that. They seem to think that if you can't see it, it's not a tangible, I guess, as the best I can understand it. Because I think odor, to have an odor, it also needs to have atoms of whatever substance is smelling. I I understand your point, Your Honor. The the I think that the there's some confusion here in the Wilson case in the Supreme Court, the California Supreme Court case. The parties there stipulated that there was no property damage and there was no particulate matter that passed over or onto the land. And so the court there said, well, in other cases there have been those things. They didn't say you need to have particulate deposit onto the land. The there hasn't been a case that has been. The other thing I would say is that odor, the odor cases generally are about things floating over in the sky, you know, through the air. And I think you can understand the court, California courts, to saying to be saying things floating in the sky and the air like odor are aren't don't sufficiently implicate the interest and possession of property of land to to constitute trespass. But there are many cases that involve contamination of the ground, physical things going through the ground. That's real property. That's what trespass is interested in. And there are these cases, the Martin case, that's, as I said, that say that invisible particles are sufficient. That is what particle that's what particulate matter is. It's physical. It's corporeal. It is a physical thing, even if we can't see it. And I think that that's so I think that the court erred in granting judgment on the pleadings where you have to take all inferences in Mr. Navarro's favor on the trespass claim. Turning to the nuisance claim, the court erred in granting summary judgment when there was a material disputed fact. And I would think there are two errors that in particular that we've pointed out. One, the court's order did not address the evidence of harms arising from subsurface contamination. The court focused on the air contamination from Dr. Clark's model. But as we've pointed out, there was evidence in the record that the groundwater contamination of benzene had exceedances of the relevant screening levels by 1800 to 2600 times. There was also evidence that tests of the soil gas again in the soil, the physical stuff testing in in the soil of Mr. Navarro's home, 2205 Delama Boulevard. And this is that ER 1223 had tests for benzene of 170 to over 5000 times the relevant screening level. That's 550 to 17000 micrograms per meter squared. The relevant screening level was 3.2 micrograms. So the court's order appears to have accepted that 100 in a million range could have been a significant harm, but didn't address the evidence of higher numbers that Mr. Navarro presented. Now, the second one concern just on this is from the putting myself in the district court shoes is that some of this seems to be to have been fleshed out maybe a little bit more on appeal that, you know, if you go back and look at the brief that your client filed in the district court in a posting summary judgment, it seems to be more about the 10, the risk of 10 times and talking about some of the refinery admissions and that seems to be what the district court was maybe responding to. There's elsewhere in the brief that I think does talk about the 2100 or 2166, but it wasn't really featured in the way that we're seeing here. The arguments are more fleshed out on appeal. I think that was a fair description, but that is commonly the case on appeal. We don't require parties to make every single... To a point, you know, I mean, because I'm putting myself in the district court shoes and seeing some of the arguments made on appeal and I'm going back to the briefing below and asking, well, where was this? Because it's not addressed in the district court's decision. And so that's a clue to me that maybe this, it was either missed or it wasn't presented in a way that the district court saw as salient. I, as your honor recognized, the 2600 from the measure about the groundwater is in the briefing below. It is in the separate statement of facts that Plankton provided. I agree that it has been presented in more nuance on appeal, but that is commonly the case. I don't think that there is a waiver here of that point, but to the point, and this goes to the second error that the district court made, is the court weighed the evidence. There was conflicting evidence about whether there was substantial harm here. Plankton presented expert evidence that from Dr. Clark saying exceedances of over 10, at least 10 in a million present a substantial risk to health risk to people. That's based on my expertise as a toxicologist and my measurements and my understanding here is my rationale. There is no dobert motion to exclude that evidence. That's evidence in the record that a jury could rely on to conclude that there was a substantial harm to Mr. Navarro here. Now the defendants presented their own expert evidence. They challenged Dr. Clark's conclusions. They said that a jury potentially could agree with them, but that's a fact dispute. Whether the harm is substantial for purposes of California nuisance law is clearly a question of fact and there is competing evidence in the record here. Other than the expertise of people adverting to a phrase substantial or significant, is there any law about what standard applies or is it simply that a jury can look at everything and say well this seems substantial or seems significant. That is one could imagine somebody saying that 10 in a million counts and 1 in a million doesn't, but is it just all up to the jury to define those words substantial and significant? The standard in California law is whether a normal person living in the community would be substantially annoyed or disturbed by the impact that is being challenged. The California courts say this is a fact question. Nuisance involves some balancing and some understanding that there are some things in a civilized society that you need to put up with and some other things that you don't. I guess the reason I asked the question that way is because it struck me that there is not very much factual dispute about what these government screening levels are or much factual dispute about the measurements. That is I didn't see much where somebody says well your measurements are bad. Is that a fair reading of the record? I think that is a fair reading. And let me because you were just making this big point about the ground water, but the only harm that your people talk about is the ground water leading to vapors and the measurements we already have the measurements of vapors, right? I mean we have a measurement inside the house of 1.2, 1.3 parts. So does it matter whether the judge focused on the ground water or not because the charge isn't that drinking the ground water will make him sick, is it? The charge, the ground water, what's relevant from the ground water is the vapors extending into the house. We can look at those standards and that's where we just have Dr. Clark saying what is it? Anything over seven is unacceptable. Well he's Dr. Clark said that exceedances over 10 above the screening level pose an unacceptable health risk and that's based on his experience as a toxicologist and his reference to a number of regulatory standards including the Prop 65 standard in California and the Department of Toxic Substance Controls standard. Is there any testing that showed levels above that inside the home? Yes, the testing of benzene inside Mr. Navarro's home in 2019 was more than 10, it was about 13 over the relative. Is that what I, there's so many numbers here I don't want to get myself wrong. I thought here was where the testing was 1.2 to 1.3 units and one of the governmental agencies said 0.1 is the standard so they were obviously way over that and the other agency was at the SCAD said the three is the standard so they were well under that. Is that a fair reading of the record? The testing was 1.2 to 1.3 micrograms per meter cube and the relevant standard that Dr. Clark referenced was 0.097. Which is basically 0.1. Yes, yes. But then the other regulatory agency said the standard was three. Is it, am I not right about that? One was the TSC and the other was the SCAD. I'm not sure about that, your honor. I know that the relevant rate for soil gas in the soil was 3.2. And so in each place there's a different standard. I see that I'm over my time. Yes, go ahead. Before you sit down, I'm sure our presiding judge will give you some extra time for rebuttal. On the, the district court makes a comment that the air contaminants in and around the home are at or below background levels for the Los Angeles area. Is that an inaccurate statement? The testing of Mr. Navarro's home, they were testing outside and inside and the tests inside were higher, had higher ratings than the tests outside. The district court says, well, they were basically comparable to ambient air. Is that accurate? I think that Mr. Navarro would contest that, but I think that the related point is that for purposes of California law, the fact that there are other sources of a similar harm is not a defense for a nuisance claim. That's the Vovinkel case from the 1930s that we've. Does your theory boil down to essentially that anything that increases the risk above background levels creates a dispute of fact as to whether it's substantial as long as an expert would come in and take that position, which is what I understand the experts to have done here? No, your honor. It's if the readings exceed the environmental screening levels that have been determined by experts to be levels about trying to avoid unacceptable health risks. And if an expert says- You just put the word unacceptable in. Isn't it that it's a level of concern to check into it and see what things are? Was unacceptable in any of those screening level statements? That is how Dr. Clark describes the risks in his- Okay, and let me mea culpa. The level of three units is from the OEHAA. It's not from the SCAD, just so I won't confuse this. Could I ask? We haven't gotten to the class cert issue, and I just want to ask a question about this. So my understanding is that the nuisance theory kind of isn't really, we've been using kind of a shorthand of the level of health risk. But I think if I'm right, and correct me if I'm wrong, the nuisance theory goes through like a psychological reaction to that. So it's like there is this health risk, but the question is would a reasonable homeowner who knows about that think that they are distressed and use their land differently or something because it has to affect the use of land. Am I right so far? I understand what you're saying. Okay, so if that's right, then how is it amenable to class cert? Because it goes through this, what did the person know? How did they react? How did they use their land? Is that a reasonable use of land in that area? All of these things that seem much more individualized. It's an objective standard. So the question under California law is would a reasonable person respond in a particular way? And that reasonable person doesn't depend on the individual class members. So you could address that on a class-wide basis by looking at what's the increased health risk that is being imposed by this common activity and what a reasonable person would say.  So sorry, do you have a case that says that the... I thought we had to show like an actual interference with the use of land, not just that some hypothetical person would have an interference with the use of land. Isn't that why we talked about the lemons and the... I mean, I thought that's why we were talking about do you go outside in the backyard and the lemons and all these things. Are you saying those are totally irrelevant because it's only whether a reasonable person would not go outside? My understanding of the California law is that we're talking about a reasonable person, that it's an objective standard. And I believe that San Diego Gas describes the standard that way. The question about substantial harm is, is this a... How would a reasonable person, it's an objective standard, how would a reasonable person react? What is the evidence that goes into that analysis? I mean, presumably if the testing numbers were exceedingly high, very, very high through the roof and people nonetheless didn't change their behaviors and just went on living their daily lives, you would still come in and say, well, no, that's objectively interfering with someone's enjoyment of the property because of the health risks. But we're also being presented with some evidence about what Mr. Navarro did and how he did or didn't change his behavior. So what does a court look to to make this evaluation? I think that under California Civil Code 3479, anything which is injurious to health or indecent or offensive to the senses, so as to interfere with a comfortable enjoyment of life or property, is a nuisance. And so something that is objectively injurious to health, that interferes with someone's life, the ability to comfortably enjoy life because it is causing the risk that they will have adverse health effects, is a nuisance. And I think if you look at the objective... But does it all just come down to what the testing has to say about this? Because if the testing shows, you know, de minimis risk, but yet people shelter in place and don't leave their house, that would be unreasonable given the risk. And so would it not just come back to what the data has to say? I think the data has a lot to say with it. I would also say that the court erred in discounting Mr. Navarro's testimony about his own responses to the extent that that's relevant. He did say that he has been concerned about his health for a long time and that he stays inside and brings his children and grandchildren inside at times as a response to those concerns. But you're saying that testimony didn't matter. He didn't need to give that testimony because all that we have to ask is would a reasonable person have been worried under these conditions? I can see the skepticism in your eyes and so I will say yes, but that he did give that testimony and it does support his claim and it was an error for the district court to weigh it and to decide it wasn't sufficient. He also said other things that go the other way and that's a fact. I'm inclined to agree with you that the district court erred on his individual claim. I was just having trouble figuring out how that gets you to a class because maybe I'm misunderstanding how it works, but I thought that kind of testimony was relevant and so then I was having trouble understanding how you extrapolate to a class. And I think that given the steps that have gone through, that this case has gone through and where we are now, I would say that the proper response is to reverse on the merits for Mr. Navarro's individual claims and send the case back to the district court to re-evaluate the classification question, which again, the court's order on class deserting the class and denying Mr. Navarro's motion to substitute rested heavily on the court's conclusion that the court thought Mr. Navarro didn't have viable claims and if that's incorrect, if this court reverses, that analysis should be done anew. But just to be clear on the trespass claim, you are arguing first that the district court just too narrowly construed what your claim was, which was not limited to just vapor intrusion but also groundwater contamination, underground seepage of a plume. If that's the case, what would happen if you prevail on that, what would then happen on on remand? Presumably more motions practiced potentially on the viability of this trespass claim properly understood? Well, I think this court should reverse and say that that is a viable trespass claim that Mr. Navarro has alleged and perhaps then there is a renewed consideration of classification of that claim. I would say though, again, groundwater and soil contamination is part of that claim. The soil vapor itself is also sufficient to state a trespass claim. I understand your position on that. Yeah, okay. I know I'm way over my time.  We'll still give you three minutes for rebuttal. Thank you. May it please the court. My name is Ann Vojts and I represent TORC and I'm also arguing on behalf of ExxonMobil today. In this case, the court had five complaints in front of it, five different named plaintiffs and eight years later, here we are and the court properly found the plaintiff's counsel after all that time, after effect discovery, after expert disclosures, still couldn't advance a proper class, still couldn't assert a proper claim and still couldn't identify a proper named plaintiff. This court should affirm. If I might begin with Judge Friedland's question about the class certification, first I'd note that with the class certification, if the court looks at the elements of nuisance in particular, my colleague on the other side was focused on the third prong, which does involve an objective question. The question is whether the interference is not just substantial, but also unreasonable. But that's not the only prong that the court has to consider. It also has to consider two that do turn exactly on Mr. Navarro's experience. And that is one, whether he's proven an interference with his use and enjoyment of his or her property. And second, whether he's shown that the invasion of that interest was substantial, that it caused him to suffer substantial actual damage. And to Judge Boggs' question about what the court, what the case is and what the law says about what substantial is, the restatement says it requires proof of significant harm, a harm of importance, an invasion that is definitely offensive, seriously annoying, or intolerable. Those are the standards that the court properly applied here. And with respect to the question of class certification, those are questions that are fundamentally individualized, as the district court found. So that restatement language sounds kind of objective, though, doesn't it? I think it involves both. And I think when you look at the first and second prongs, those are questions about causation that are specific to the person. They do not ask whether a reasonable person had proven an interference. They say, is it an interference with his use and enjoyment of his or her property? And that's from Chase V. Wiseman. And that is also the second prong. Have they shown that the invasion of his interest in the use and enjoyment of the land was substantial? Those turn on Mr. Navarro's specific subjective experience on his particular circumstances. It cannot simply be extrapolated. And that is part of the fundamental problem that cuts across all of the arguments here that my colleague on the other side has made, which is, what is the evidence about Mr. Navarro in particular? That is the issue with the motion for summary judgment. It's also the issue with the judgment on the pleadings. At some point, Mr. Navarro had to be held to the proof of his particular case, because both of those motions were after the class had been decertified. So the only thing that mattered was his experience. And so with respect to trespass, if I might address that quickly. Can I just pause you there on that before you do trespass? Because if a plaintiff in this situation is being exposed to highly toxic chemicals but either doesn't know that or has no choice but to go and live their life, do we fault them for just the way they've reacted to the situation? Well, I don't think the court faulted Mr. Navarro, but it did question, for example, when it raised questions about the adequacy of him as a named plaintiff, whether he would be effective when it goes to decertification. And it questioned it when it came to the question of nuisance, whether that was enough in the absence of relevant evidence specific to his property, whether his conflicting statements or not even conflicting, whether those statements were enough under the standard for a non-movement. Because at this point, remember that defendants had demonstrated the absence of evidence. So the burden then shifted to Mr. Navarro to show that a reasonable juror could find in his favor. That was not what happened here. There was not sufficient evidence to do that. There are some kinds of intangible intrusions that people's experience would be very relevant. So if someone's claiming it's too noisy, if they really haven't been bothered by that, then we can take that into account. The same would be true of an odor. If it hasn't bothered them, they're outside, then we can factor that in. But with respect to a vapor intrusion that is not otherwise detectable, how do we rely on somebody's experience in everyday life as part of this equation? Well, the court didn't solely look at it. What the court did was first it looked at sort of the evidence. And I'd remind the court again, at this point, the claim when we're talking about trespass and nuisance had been narrowed really to the soil vapor question, the question of soil vapor intrusion. And to my colleague's point, I think it is fair to hold Mr. Navarro and his counsel to what they said. They described their claim. Despite what they said, that was not a single sentence. It was not in a single motion. This was over a series of deliberate steps, a deliberate position that they took. That they don't like the results of that now is not a reason to exempt them from the consequences of their own choices. So here, I think there are two things that the court can look at. And if your question goes to trespass versus nuisance, the answer sort of, I think, is the same, which is that the evidence that they had was, first off, it didn't amount to a legal claim when it came to trespass because what they were talking about was something that was intangible and that didn't meet what Wilson, Palmisano, and others have said is required for an intangible intrusion. That is either physical damage to the property, which he's never alleged and in fact disavowed, or alternatively, a deposit of some kind. And again, that wasn't ever what they argued. Right, but this depends on sort of characterizing the trespass claim in the way that the district court did. But what about the plaintiff's argument that, no, in fact, it's broader than that? We alleged a trespass essentially underground and the vapor intrusion was the harm. Sure. Well, if I could take a moment and walk the court through what plaintiff's counsel said below. I think that might be helpful to understanding why we think it is entirely fair to hold them to what they said. First, in the reply in support of the motion to substitute Mr. Navarro's named plaintiff, they said, the trespass claim asserted on behalf of the ground subclass remains unchanged. It is premised on evidence that subsurface contamination from the refinery poses a vapor intrusion risk to the structure in the class area. That's 17 ER 4761. At the hearing- Just to posit on that, I will say I read that the way the plaintiff reads that, that it was vapor intrusion was the harm, but they were also alleging a subsurface contamination, which I take that to mean trespass. Well, I think that if the court looks further beyond that, I think it gets clearer. I read it as clear as is. But even going further, if you look at the hearing, they say we're dealing with subsurface contamination, which is benzene in the soil vapor, which you've alleged is intruding into the indoor air of the class members. So they're saying the intrusion is when it's coming into the indoor air, 17 ER 4643. And then in the motion for judgment on the pleadings, to Judge Freeland's point, at no point as this continued to go on did they say, wait a minute, court, you made a mistake. They never moved for reconsideration. They never said, no, actually, our theory is broader than that. What they said in their motion for judgment on the pleadings where the defendants advanced this hearing said, look, you have argued only intrusion from soil vapor. That is not a cognizable legal theory under California law. They didn't come back and say, no, that is not nowhere in their brief that is not our theory. What they said, and if you look at the heading, they said defendants are not entitled to judgment as a matter of law because the intrusion of hazardous vapors constitutes a trespass. They said hazardous vapors found in soil constitute a tangible and harmful intrusion. That's 4378. And they argued over whether this was intangible or not. They argued that this was not akin to the electromagnetic fields, that this was instead still something that was measurable, even if it was not something, as they said, that could be, as they admitted, could not be seen or smelled or heard. So can I just pause you for a second to, I had problems figuring out when you were citing things in your brief, and I think maybe you weren't the one who wrote the brief, what it was going to, because my ER does not line up with the page numbers. And I just had the same problem again, because I think you said 4378. And when I look at that, it's a table of contents. And so there's like some mismatch, I think, between your numbers and mine, at least. And I'm wondering if you have any explanation. Sometimes it seems like it's 12 pages off. Sometimes it's 16 pages off. Is there a pattern, or do you, can you explain this? So these are the ERs that we were served with. So we can go back and confirm those sites. I'm happy to verify those sites against the docketed ER. But this was the ER that we have with, that was provided to us by Planners Council. And they were paper. You got paper ERs? These are the ones that we downloaded with the numbers. It may have been refiled. I checked this on the docket. But it is an issue, and perhaps we could request a corrected answering brief that might help our review of it. I think we were able to piece together pretty much everything. But Judge Freeland is right. I just went to the page you were citing, and it's off by a number of pages. So we could have that cleaned up. And maybe if yours are off and mine are off, maybe we're using different, we're having some confusion about what ER you're talking about. If there was a subsequent one that was corrected behind the scenes, we may not have been aware of that. We may have downloaded it when it was initially filed. If so, we apologize for the inconvenience to the court. What we were working off of was the electronic version that we pulled down from the Ninth Circuit system. And these are the numbers that we had. And I actually, in coming up with these, went through and verified them against my electronic copy. So we are certainly happy to submit one with corrected information. Well, maybe if we just can piece that together, maybe we're using a later one. Do you know the date of the one that you're using when you cite that, or not? I would need to confirm. I'm sorry, Your Honor. But it is, we do have a base-numbered version that was provided with us, and that was what we were working off of. Okay, maybe we'll be able to piece it together. But it might be helpful after the fact if you either file a corrected version or some information about what one you're citing so that we can try to piece it together. We certainly would be happy to. That would be great. And in this case, I can, the court, with respect to, I can at least give the court the, so for the plaintiff's reply, in support of the motion to substitute the named plaintiff, that would be at page 2. And I'm sorry, also at, yeah, at page 2 of that.  And then with respect to the motion for, their opposition to motion for judgment on the pleadings, the part that I was citing was at page 13. And we will provide corrected cites. On the trespass claim, and maybe this is also a question for the plaintiff, but the theory here in terms of how it got narrowed down was that just over time, the plaintiffs narrowed this down to soil vapor intrusion. Is there a reason why they would have done that from your view? Yes, there was. And that's because when they asked to substitute in Mr. Navarro, they'd already gone through a series of plaintiffs and the court had said at this point that this was the last straw. The court had already expressed concerns about the way that the case had been litigated and expressed concern about whether this was being driven by class counsel. And so what the court said was this needs to be the same. And plaintiff's counsel promised that it was. In opposition, the defendants pointed out that, in fact, there were real tensions, both between Mr. Navarro's claims and Mr. Yusuf, the previous named plaintiff, and that there were tensions between what Mr. Navarro said when it came to issues like odor and noise and other things and the allegations in the complaint. And so this was the way that they could survive that particular hurdle was by narrowing it. So, yes, I think that it was a deliberate choice to avoid the other arguments that could lead them into problems with the court saying, but these aren't the same. It makes sense to eliminate odor and noise because of the earlier plaintiffs, but I don't understand eliminating the liquid under the ground part. I think because the evidence that they developed all went to the vapor intrusion. To the extent that they had evidence, that's what it was. But don't they have the maps of where the flow under the ground is? But when you're talking about the impact on particular houses, when you're talking about vapor intrusion, that's, I think, really what they had developed. But can you have a trespass claim without vapor intrusion? I mean, if they had just alleged there's a plume underground, would that not constitute a trespass claim under California law? I think it depends on how. For example, if it was groundwater, no, because the groundwater doesn't belong to the property owner. But again, I think this is a case that has gone on for a long time. They had a number of choices and chances that they made over time. And what they did here was they should live with the choices that they made. If I might address the question of nuisance, because I think there were some questions going back and forth, both about the standards, both legal and the evidentiary ones. Specifically with nuisance, I think it's useful to look at what we talked about before, which is what is it that is actually required here? And with respect to the cases, I think the first off, to start with the issue of class certification, the court was right. These are fundamentally individualized issues that cannot be adjudicated with class-wide proof. Even when the court initially certified the subclass, it recognized that there were a host of individualized issues that it thought at that point could be dealt with with common proof. And it became clear over time as plaintiffs tried to develop their case, it couldn't be proven and they couldn't establish any sort of class-wide remedy. So we think, first off, that was certainly not an abuse of discretion. So let's, okay, as the class-wide remedy, let's just stick with one part of it. So I think they were asking for an injunction, right? So like, I think you are relying on the San Jose airport case, but that was asking for damages and seems very different to me, because the amount, what property and how much effect on that property and how much damages, that sounds like a lot of individualized things. But if they're asking for an injunction that would be like put on filters or put a wall around your place or something, why isn't that class-wide? Why wouldn't that work as class-wide relief? I think because if you look at what their experts actually provided, they actually didn't really grapple with what it would take to establish any sort of what an injunctive relief would look like, what would abatement require, and whether that would be something where you could simply have a single injunction. Because what other cases have said when they're dealing with B2, for example, is they've said when you're thinking about this, you have to figure out whether there's a single injunction that can resolve this problem. Is this, for example, something like we've seen in prison cases, where you can issue an injunction saying don't enforce this particular policy? Something that has to deal with abatement, which is so particularized based on the particular circumstances of an area, of a particular property, that is not something that lends itself to a single injunction as opposed to a host. Is that, I mean, can we understand that to have been the basis here? I don't know that it was. Like if the issue is no one was really talking about whether some filter at the plant or some wall at the plant, I mean, there wasn't discussion like that about whether you haven't proposed a remedy. I didn't think that was really the basis of the decision, was it? I think the court did address whether there was actually a remedy, but the court also addressed a whole host of other issues. And for this court to reverse on the decision to decertify either class would require plaintiffs to essentially run the table. They would have to prove that it was an abuse of discretion on each of those points. So that plaintiff had, in fact, adequately demonstrated that he satisfies Rule 23A, where all but numerosity were at issue, and they didn't. And second, whether they either satisfy B2 when it came to the nuisance class or an alternative B3 when it came to the trespass class. And again, those are even when the court granted certification the first instance, it recognized the number of individualized issues. So certainly we think under either, it doesn't satisfy 23A, and it doesn't satisfy either B2 or B3. Can we go back to his individual nuisance claim? Why do you think his individual nuisance claim is inadequate? So I think if the court looks at, I think the district court's decision sort of walk through very carefully why the things that he was relying on simply weren't relevant. So this isn't a case where the court was weighing the evidence or resolving conflicts. What the court did was it looked at what the actual evidence was that was being put on. And if I could address, perhaps it might be helpful to address some of the levels that he's talking about and why he thought that this was adequate. So for example, they say that the soil vapor, you know, they talk about the 2,666 number. I'd note first, as your honor pointed out, that that was not something that was actually clearly argued below at all. Second, it's a number that isn't supported. It is not something that has any support in the record. There's no record evidence of where those samples were taken, when they were taken, what they were for. It appears to be something that was largely made up. And it is something that is... But the expert rule, I mean, Clark used these numbers, right? I don't remember that. So I understood the judge should just be saying this isn't really bad enough, but I'm struggling with why that isn't a jury question. I mean, to now say it's made up, I'm not sure that was the argument made. No one struck Clark, I don't think. We did object actually to these numbers because among other things, the links were broken, they weren't substantiated. But even going to the question of whether the court could make that determination, we think yes, because what the court is entitled to do, given that we had shown the absence of evidence, was to then look at the evidence that the non-movement put on and say, is this actually enough? And in this case, the 2,666 is not specific to Navarro's actual individual risk. And at this point, when we're looking at this motion, this is purely about Navarro's individual nuisance claim. So the question is, what is the risk to him? And what the court appropriately said is, if you look at all these various standards that they're all trying to add together to try and create something that looks bad enough, you have to look at, one, what those are. And as the court already noticed, most of these are screening levels. They're not intended to evaluate risk or certain risk to an individual. They're also intended to sort of say, maybe we should look at this further. But that is not enough, in this case, to suffice, to get beyond summary judgment. Why not? I mean, if the question is, would a reasonable landowner be worried about this enough to do things like stay inside and not eat his lemons, then why isn't an exceeded screening level enough to cause this concern? And he showed that he did have this concern. I'm having trouble figuring out why this isn't enough, at least for a jury to consider. You might win. You might win. But to get past this stage. I think two answers to that, Your Honor. First, with respect to the expert evidence. And second, with respect to his answers. So first, with respect to the expert evidence. Again, I think all of these were, if you look at the actual numbers that they used below, the numbers that they relied on was a risk of 10 out of a million. And their position below was that anything over just the existence of a risk, anything over one in a million was sufficient. That plainly is not adequate. And the court is entitled to look at what is substantial. And so, is this not just something that, so there are two components to that, as we've talked about. There's both, is it unreasonable? And is it something that actually affected him? And is there evidence of both those things? And the court was, I think, appropriately skeptical on both points. In this case, first turning to the question of whether this was, you know, looking at these screening levels, they did not establish what plaintiffs thought that they would. Even by their own standards, the 10 in a million, that is the number that they relied on below. Now they've sort of said, well, they were trying to get over the 100 in a million. And so they came up with and started relying now, raising an argument that they didn't raise below about the 2,666. But even if this court were to ignore the fact that wasn't raised or argued below, even if this court were to sort of credit it, that is not a number that actually shows what is the risk to Mr. Navarro. And that is what matters here. Second, if you look at the- In what way is it not? I mean, what do you think it is? I think it is a number that can't be understood because you don't know where it came from. You don't know when it was taken. You don't have, and it's not specific to Mr. Navarro. This is the statement about certain levels that were taken to the north of the property and some that were to the south and the southwest of the property. And rather oddly, one of them is something- I don't have the numbers at my fingertips, but it's 1,200 and 1,400 and something, four-digit numbers. And then the other one starts with like three and goes from three to 4,800. And I thought it was a typo. It should have been 3,000, but it isn't. It's three to 4,800. No, and I think that's sort of indicative of the issues here. The plaintiffs were sort of grasping for any number that would get them beyond the summary judgment. We would submit that none of them do because none of these standards actually- But when you say beyond summary judgment, that implies that there's some kind of numerical standard, whether it's 10 in a million or 100 in a million. And where does that come from? I think the problem is it doesn't come from what they put in front of the court here. And the issue is that the standards that they did advance really were ones to trigger sort of- were not for the purposes of evaluating health risk. They were for purposes of determining whether a community might want to do further investigation. So are you saying that ipso facto that makes it not substantial? I think there certainly might be cases in which there could be a substantial risk where you would survive summary judgment. This case isn't that. Because if you look at his particular individual claim, you look at the evidence that was provided in support of it, they admitted in their- in the statement of genuine disputes of material facts that they hadn't gone back. They said that Clark's report was designed to talk about sort of risk overall, but was not specific to him. And we think that that failure coupled with his statements about- Because usually, and not usually, but the cases I've been familiar with, it usually starts out with people saying, I had a sore throat, I had scratchy eyes, you know, something happened in the sky that happened to me. And I take it in Navarro's case, the evidence is all this risk of cancer. Yes. He never attributed any health issues to it. In fact, the experts never attributed any health incidents to him or to any other member of the community traced to the alleged contamination. But you don't seem to be denying that a high enough risk of cancer 10 years from now would count. I think it potentially could, depending on the evidence. And that would require sort of showing that all of- that they had enough evidence on all three prongs of the nuisance test. We don't think that they did here. We think it was entirely appropriate for the court to grant summary judgment. It certainly was not an abuse of discretion to decertify the classes. And it was appropriate in this case also to grant judgment on the pleadings. The district court seemed to think that 100 in a million maybe would be a good benchmark. Do you agree with that? Or substantiality? No, we don't. We think that that was- but plaintiffs seem to have accepted that. But we think that given that they've accepted that, the fact that their own expert said the risk was 10 out of a million just proves that the district court was- made the right decision here. Yeah, but it's not 10. It's not 100. Is there some external source that one looks to? This seems to be Judge Boggs' question. I have the same one. An external source to determine what the appropriate standard is? Yeah, but in terms of whether someone stated a disputed material fact using testing data to show a substantial harm? I think if there was evidence that said specifically from this particular property with this particular individual, there is this risk. And this is how we've calculated. That might be a different question for this court. That is not the evidence that was put in front of the district court or that's in front of this court now. If the court has no further questions, I see I'm well over time. Thank you. And with the court's leave, I think we will ask to submit a corrected brief. That would be great. Work with plaintiff to discover which is the right version of the ER. That would be very helpful. Thank you. Thank you, Your Honor. There was a corrected set of excerpts of record that were submitted a week or two after the original one was through the Ninth Circuit system, as I understand it. Quickly, plaintiffs do not accept that $100 million is the correct standard. Our plaintiff's expert, Dr. Clark, said $10 million is the standard. And that's why the evidence below was presented as the exceedances here are well above $10 million. The district court adopted $100 million out of the various different standards that are out there. And so part of our evidence on appeal is that even if that were the correct standard, that there still was a disputed fact here. That's why we're talking about the higher numbers from the groundwater and the soil tests. But it was error for the district court to accept that standard in the first place. There were tests of Mr. Navarro's property in the indoor air at his home that showed exceedances of 13 times the standard for benzene. That in itself should have created a material disputed fact for the nuisance claim. On the judgment on the pleadings claim, I think that plaintiff's position is clear, has been clear in the discussions. The plaintiff did not abandon the allegations about contamination of the soil and the opposition to the motion for judgment on the pleadings, ER 4393 to 94. The plaintiff said, you know, the record shows that liquid benzene and other chemicals can cause property damage. There are toxins found in plaintiff's soil. The response perhaps could have been more eloquent in precisely pointing to the liquid contamination in the land. But there was no clear, deliberate abandonment of that allegation, which is the standard for a judicial admission. Dr. Clark's reference to the 1800 to 2666 times the relevant screening level for groundwater, that is in the record. Dr. Clark's declaration, it's in the statement on the plaintiff's statement of undisputed facts. It's ER 2824 to 26. Dr. Clark explained those numbers. The statement is ER 2016. Those are not made up. They were from the expert. There was no deliberate motion to exclude that evidence. So again, the district court erred in granting judgment on the pleadings based on a judicial admission that didn't exist. The corrected third amended complaint stated a trespass claim. The district court erred in granting summary judgment when there was a dispute of fact. There was a battle of the experts about whether there was a substantial health risk. And that question, whether the substantiality under California law is a question of fact that needs to go to a jury. And those two errors infected the class decertification and denial of Mr. Navarro's motion to substitute as a class representative. So that order should be vacated as well, unless there are no further questions. Thank you. Thank you both sides for the helpful arguments. This case is submitted and we're adjourned for the day. This court for this session stands adjourned.
judges: Boggs, FRIEDLAND, BRESS